U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

MAY 19 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Kinchen

versus

La. Dept. Of Public Safety & Corrections, et al

Civil Action No. 6:12-cv-00645

Judge Richard T. Haik, Sr.

Magistrate Judge C. Michael Hill

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by defendants, Department of Public Safety and Corrections, State of Louisiana, and Officer Becket Breaux, individually and in his official capacity as a State Trooper for the State of Louisiana [Rec. Doc. 32], plaintiff, Leon Kinchen's, Opposition [Rec. Doc. 36] and Supplemental Memorandum in Opposition [Rec. Doc. 48] and defendants' Reply [Rec. Doc. 41]. Oral argument is not necessary in this proceeding. For the reasons that follow, the defendants' motion will be granted in part and denied in part.

*I. Background*

Plaintiff filed this action against the Department of Public Safety and Corrections, State of Louisiana, and Lieutenant Becket Breaux, individually and in his official capacity as a State Trooper for the State of Louisiana,[1] under 42 U.S.C. § 1983, for unlawful arrest and excessive force and a *Monell* claim, as well as Louisiana state law claims of assault and battery, false arrest and illegal imprisonment and negligent hiring, under La. C.C. art. 2315, *et seq.*, based on a traffic stop during which he was placed under arrest.

On March 11, 2011, at approximately 3:10 PM(3:09–3:11), *R. 32-5, 32-6, p. 67*, Lt. Becket Breaux was driving a marked state police unit while transporting an inmate-trustee, Jered Bolt, to the St. Martin Parish Substation. The Arrest Report submitted on March 18, 2011, seven days after the incident, Breaux's statement in the State Police Internal Affairs

---

[1] Breaux is presently a Captain and the Commander of Louisiana State Police Troop I.

Investigation, *R. 36-12,* and Breaux's deposition testimony, *R. 32-6,* provides that Breaux was traveling south on Teurlings Drive when he and Bolt observed a black Toyota Pickup Truck ("the Truck") traveling north on Teurlings Drive at a high rate of speed and using the left turning lane in the center of Teurlings Drive to pass another vehicle. Breaux activated his Stalker DCS #6857 radar and targeted the Truck in his rear radar antenna. Breaux determined the Truck was traveling at speeds of 65 - 68 mph. Breaux turned his unit around and attempted to catch-up with the Truck which was being driven by the plaintiff, Leon Kinchen.

Upon approaching the intersection of East Willow Street and Teurlings Drive, the Truck changed lanes to the left turn lane and turned left on a red illuminated light. While pursuing the Truck on East Willow Street, Breaux noted it continued to travel at a high rate of speed, which he estimated to be at least 65 mph, in an area with a posted speed limit of 40 mph. Prior to his approach of Faulk Elementary School, Breaux activated his emergency lights and siren and contacted Troop I dispatch to advise of the Truck and the violations. After turning right on red without stopping at an estimated speed of 15-20 mph, at the intersection with Louisiana Avenue, Breaux caught up with the Truck as it approached Alexander Street. Plaintiff stopped the Truck in the parking lot of M & S Grocery located on Louisiana Avenue.[2]

Breaux stated that he exited his unit and ordered plaintiff to exit and place his hands on the Truck. Plaintiff initially complied with Breaux's order after which Breaux informed plaintiff he was under arrest for reckless operation. As Breaux placed one handcuff on plaintiff's left hand, plaintiff disobeyed the order and turned as if he was attempting to pull away and asked "is this necessary?" *R. 32-6, p. 124.* Breaux placed his hand on plaintiff's

---

[2] The record indicates that plaintiff traveled through three school zones. The activation times for reduced speed in the school zones at issue were: Teurlings Catholic 2:25 - 3:00 PM; St. Genevieve Elementary 2:30- 3:15 PM; J. W. Faulk Elementary 2:25 -3:20 PM. *R. 32-5.*

shoulder to prevent him from making a full revolution and get on his "gun side," *Id. at p. 133,* and told plaintiff to turn around. *Id. at p.129.* Breaux then had to grab plaintiff's right hand and forcefully pull it to his back in order to place the second handcuff on him. *Id. at pp. 130-131.* After checking each handcuff for tightness, Breaux double locked them. *Id. at p. 138.* Breaux advised plaintiff of his Miranda rights and of the traffic violations he had committed. Plaintiff confirmed to Breaux that he passed in a no passing zone and that he was speeding. After plaintiff asked that he not arrest him, he stated that his son was an attorney and added "I cannot wait till Bobby Jindal finds out about this."

Breaux further stated that he advised the Troop dispatcher of a "code 4" and requested assistance. Thereafter he asked plaintiff if the handcuffs were okay and plaintiff requested that Breaux loosen the left handcuff. Breaux released and repositioned the left handcuff and checked both handcuffs for tightness. Plaintiff stated, "that's better." Plaintiff was released to Trooper Scott Lopez for booking and transport. Plaintiff was issued a citation for Reckless Operation, under LSA R.S. 14:99, in lieu of the following violations: speeding, speeding in a school zone, improper lane usage, improper passing, and disregarding traf fic signals."

Plaintiff was initially taken to the Lafayette Parish Correctional Center for booking. He was not accepted for booking, however, because Reckless Operation, a criminal traffic violation, was the only charge against him.[3] Thereafter he was taken to Troop I Headquarters for booking, processing and release. A bench warrant was issued for plaintiff's arrest under Docket No. 2011-T-5058, 15th Judicial District Court, Lafayette Parish, Louisiana. On June 28, 2011 plaintiff paid $204.00 and the bench warrant was recalled by the Judge presiding over the case.

---

[3] Defendants represent, and the transporting officers involved confirmed, they were informed that the jail was near capacity and did not have enough room to accept a non-felony charge. *R. 36-12.*

3.

In his Affidavit, *R. 32-5*, his Internal Affairs statement, *R. 36-12*, and his deposition, *R. 32-4*, plaintiff disputed the Arrest Report on several factual issues related to his traffic violations. Plaintiff stated that he knew the speed limit in the area he was traveling was forty-five and that he would have slowed to thirty-five in the school zones even though the lights were not flashing after 3:00 PM. In his deposition, plaintiff stated that he "assume[d]" that he was traveling about forty miles an hour down Teurlings because he had "just slowed down for that red light" and he "was going forty-five before that." *R. 32-4, p. 78*. Plaintiff stated that while he was traveling, he didn't see any school children walking down the sidewalk or any cars around him. *Id. at p. 123*. While plaintiff admitted he was traveling in the left turning lane, he stated that he did so because he wanted to pass a car which was going slow in the left lane in which he was traveling and a another car was in the right lane. *Id. at pp. 80, 81*. Plaintiff also disputed that the light at the corner was red. *Id. at p. 82*. As to his right turn on red at Louisiana Avenue, plaintiff stated that he "stop[ped] for a moment" and then turned. *Id.* Plaintiff stated that he "suspected" Breaux was behind him on Willow Street (before he turned right onto Louisiana), *Id. at p. 122, ll 12-14*, and that he saw the red lights in his rearview mirror as he was turning onto Louisiana Avenue. *Id., p. 47, l. 25-48, ll. 1-13*. Plaintiff stated he did not immediately pull over when he saw the red lights because he doesn't pull over when he sees red lights—he waits to see if the vehicle is "after me," *Id. p. 49, ll. 18 -23*, and because he "was not going to stop in the woods," *Id., p. 116, ll.3-5*.

Plaintiff also disputed Breaux's account of plaintiff's arrest in the Arrest Report. Plaintiff stated that he obeyed Breaux's order to turn around and as he did so Breaux "grabbed me and slammed me against my truck with excessive force... grabbed my arms with his shoulder in my back and began to put handcuffs on my hands in the back." *Id. at pp. 85-88*. Plaintiff further stated that he was going slow because he had been at Red's Gym and had just "run a lot" which caused him to have hip pain due to a pre-existing back injury and

surgery he had thirty-five years ago. *Id. at pp. 86, 137.* He stated that Breaux's alleged actions caused him to have pain in his upper back. *Id. at p. 89.* Plaintiff did not ask for an ambulance or go to a hospital. *Id. at p. 94.* Instead, he looked up a chiropracter in the yellow pages and went the following Monday. *Id. at p. 110.*

## II. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See id.* " Rule 56[(a) ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir.2005).

## III. Analysis

Defendants contend: (1) plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ["*Heck*"]; (2) defendants have qualified immunity for all actions complained of by plaintiff; and, (3) plaintiff's *Monell* claims against the Department are unsupported. Defendants attached as an exhibit to the Motion, the expert report of George

J. Armbruster, Jr., defendants' expert in the field of law enforcement policies and procedures and training[4]. Plaintiff makes the following assertions in opposition to the motion for summary judgment: (1) he did not commit a traffic violation; (2) Breaux wrongfully arrested him; (3) Breaux used excessive force in his arrest; and, (4) he suffered an injury as a result of the arrest.

### 1. 42 U.S.C. § 1983 Claims

*I. Whether Plaintiff's Claims are Barred by Heck*

While defendants provide no analysis, and merely state, "*Heck* is applicable to this case," *R. 32-1, p. 6,* the Court will first address whether or not plaintiff's claims of false arrest and excessive force are barred by *Heck*. "It is well settled that, under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Ballard v. Burton* 444 F.3d 391, 396 (5th Cir. 2006) (quoting *Heck* at, 486–87). "Although the *Heck* principle applies to § 1983 excessive force [and false arrest] claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring [the court] to focus on whether success on the [] claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction."

---

[4] The Court granted plaintiff's alternative Motion To Strike defendants' expert and allowed plaintiff extra time to depose Armbruster and to file a supplemental memorandum thereafter. The Court admonished defendants' actions in withholding its intention to retain an expert witness until the Motion For Summary Judgment was filed and condoned the Magistrate Judge's issuance of monetary sanctions in the matter. *R. 39.*

*See id.* at 400–01 (" '[T]he *Heck* determination depends on the nature of the offense and of the claim.' ").

As to his claim for false arrest, plaintiff concedes that he did not contest the citation issued with regard to the incident, but argues that he "pled down" to a failure to have a current motor vehicle inspection and paid a fine of $204. *R. 36, p. 22*. In essence, plaintiff argues that he pled guilty to a civil violation rather than a criminal statute and *Heck* does not apply. *Heck* speaks of a claim for damages in a civil rights suit and such a claim's relationship to "a conviction or sentence." *Heck*, 512 U.S. at 486. The terms conviction and sentence are terms used in the realm of criminal law and not in the realm of civil law. Defendants have not provided any authority showing that *Heck* is applicable to anything other than a criminal conviction or sentence—neither of which were issued in this case.

Nor are plaintiff's excessive force claims which arise from the March 11, 2011 incident *Heck*-barred. Plaintiff was initially charged with reckless operation in violation of LSA R.S. 14:99. A favorable judgment on his excessive force claim would not "necessarily imply" the invalidity of such a charge. Reckless Operation is not an offense committed against a police officer. Thus, as the alleged use of excessive force does not negate an element of the reckless driving charge, these claims are not barred under *Heck*.

ii. *Qualified Immunity*

When plaintiffs seek money damages from government officials for alleged violations of constitutional or statutory rights, officials in their official capacities may invoke the defense of qualified immunity. Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established that the time of the challenged conduct." *Reichle v.*

*Howards*, 132 S.Ct. 2088, 2093 (2012). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, so we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate." *Morgan v. Swanson*, 659 F.3d 359, 370–71 (5th Cir.2011) (*en banc*). Once a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (*en banc*). To discharge this burden, the plaintiff must satisfy a two-prong test: (1) claim that the defendants committed a constitutional violation under current law; and, (2) claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complains. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251–52 (5th Cir.2005). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223, 226 (2009)(overruling in part *Saucier v. Katz*, 533 U.S. 194 (2001)).

Whether an officer used excessive force during an arrest is determined under the "objective reasonableness" standard. The court must assess whether an officer's actions were objectively reasonable " 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Graham v. Connor*, 490 U.S. 386, 397 (1989). The court must consider "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was]

actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The objective reasonableness of the force used requires the court to balance the amount of force used against the need for that force. *Id.* at 399. This test "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* The test for reasonableness also must consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Plaintiff alleges that Breaux's use of force in arresting him was unreasonable. To succeed on an excessive force claim, the plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999). If the plaintiff fails to prove any one of these elements, his claim also fails. *Johnson v. Morel*, 876 F.2d 477 (5th Cir.1989) (en banc). Plaintiff submits affidavits from his chiropractor, Rowdy J. Gautreau, which states that he treated plaintiff "primarily for back pain" for four months from March 14, 2011, and Alan J. Appley, neurosurgeon, who states that he performed a decompression on plaintiff's L 2-3, L 3-4, and L5-S1 on March 22, 2012. *R. 36-4, 36-5.* Dr. Appley also states that, in his medical opinion, "the blow to the back" that plaintiff told him had occurred on March 11, 2012 "aggravated" his pre-existing back condition. *R. 36-5.* To establish a claim for excessive force in this circuit, a plaintiff's alleged injuries must result "directly and only from" the use of force. *Wells v. Bonner*, 45 F.3d 90, 96 (5th Cir.1995). To the extent that plaintiff's allegations regarding his injuries represent an exacerbation of pre-existing conditions, the Fifth Circuit has concluded that these claims do not present an injury of the kind required to make an excessive-force claim. *See id.*

9.

Even assuming *arguendo* that plaintiff meets prong two of the aforesaid requirement, the summary judgment evidence establishes that Breaux's use of force was justified and was not unreasonable. *See, Dunn v. Denk*, 54 F.3d 248 (5th Cir.1995). A reasonable officer would have thought that because of the number and severity of the traffic violations as well as plaintiff's seemingly defiant failure to comply with the lights and siren, the use of a higher degree of force to protect the community and the officer was necessary than that needed for someone who committed only a minor traffic violation. Jered Bolt stated that during the incident and after Breaux stopped plaintiff, he was in the front seat of the unit with the driver's side door open, 15 to 20 feet from the Truck and had an unobstructed view of the plaintiff's arrest. *R. 36-12, audio statement of Jered Bolt, Track 7*. Bolt stated that after Breaux ordered plaintiff to get out of the Truck and place his hands on the Truck, plaintiff came "off of the Truck and spun around" toward Breaux. *Id.* Bolt further stated that Breaux was not "overly aggressive" with Kinchen because there was no reason for force on the "man in his 70's." *Id.* Rather, he stated, Breaux "grabbed the plaintiff's wrist and held him up against the Truck with his body" in order to put the handcuffs on him. *Id.* Bolt confirmed Breaux's testimony that while plaintiff was turning toward Breaux he made statements including "do we really have handle this this way," "I went to law school," and "my son's an attorney." *Id.*

Ryan Degeyter, who was outside the M&S Grocery was also an eyewitness to the arrest. Degeyter stated that he saw Breaux approach the Truck with his hand on his weapon and order plaintiff to exit the Truck. *R. 36-12, audio statements of Ryan Degeyter, Track 3*. He believed plaintiff was questioning Breaux's command and the next thing he saw was Breaux "grabbed plaintiff and spun him around ... and pushed him against the vehicle" "with his hand in plaintiff's back" and then pulled plaintiff's "hand on the center of his back" to handcuff him. *Id.* Degeyter thought Breaux's actions were "a little forceful" and "a little over broad" but that Breaux didn't slam him or push him nor were his actions "super hard."

*Id.* He characterized the incident as "borderline pushing of an older man" and explain that his views related to any force used were primarily because of plaintiff's age. *Id.*

Despite plaintiff's unsupported allegations that he was not speeding and committed no traffic violations, Breaux consistently stated that he verified plaintiff's speed with his Radar and the evidence indicates that two of the three school zone speed limits were in effect at the time plaintiff passed through them. *R. 32-5.* Also, Bolt, the eyewitness in Breaux's unit, confirmed that plaintiff was speeding through at least two school zones and that plaintiff passed the slow vehicle in a turning ("no passing") lane. *R. 36-12, Track 1.* Thus, from Breaux's vantage point, plaintiff committed a number of serious traffic violations, including driving more than 15 miles over the speed limit in several school zones, passing in a turning lane, making a left turn on red and running through a red light during a right turn, which together resulted in a Reckless Operation charge under Louisiana Revised Statute, Title 14, of the Louisiana Criminal Code[5]. Further, while Breaux was following plaintiff, he turned on his lights and his siren to signal him to pull over, plaintiff, however, failed to pull over for a number of blocks.[6] When plaintiff finally stopped, Breaux exited his unit, ordered plaintiff out of his vehicle and instructed him to place his hands on the Truck. While handcuffing him, the record indicates that plaintiff spun toward Breaux before he had completed the cuffing and Breaux was required to forcefully turn plaintiff back around by placing his hand on plaintiff's

---

[5] The record contains evidence that plaintiff has been charged with 27 traffic violations from April 30, 1966 to June 23, 2011—16 occurred within 10 years before the incident at issue. *R. 32-5, Exh. 6.* Fifteen of those were for speeding and one was for careless operation to which plaintiff pled guilty. *Id.* The record provides that Breaux was not aware of plaintiff's past traffic violations at the time of his arrest in this case.

[6] Plaintiff testified that he "suspected" Breaux was behind him on Willow Street (before he turned right onto Louisiana), *R. 32-4, p. 122, ll 12-14*, and that he saw the red lights in his rearview mirror as he was turning onto Louisiana Avenue. *Id., p. 47, l. 25-48, ll. 1-13.* Plaintiff stated he did not immediately pull over when he saw the red lights because he "was not going to stop in the woods," *Id., p. 116, ll.3-5,* and because he doesn't pull over when he sees red lights, he waits to see if the if the vehicle is "after me." *Id. p. 49, ll. 18-23.*

11.

shoulder and pull plaintiff's other hand to his back in order to finish handcuffing him. *R. 32-4, 36-37.*

Under the objective reasonableness standard which applies in this case the Court must consider as a matter of law what happened from the officer's point of view and assess its reasonableness objectively. *Ramirez v. Knoulton*, 542 F.3d 124, 128–29 (5th Cir. 2008). The Court finds that Lt. Breaux's actions in this case were objectively reasonable.

Breaux is also entitled to qualified immunity as to plaintiff's claim for false arrest because he had probable cause to arrest plaintiff. *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir.1994). Breaux arrested plaintiff after determining that plaintiff was driving more than fifteen miles per hour over the speed limit and had committed a number of other traffic violations all of which lead to a citation for Reckless Operation, in violation of the Louisiana criminal statute, LSA R.S. 14:99.

*iii. Monell Claims*

Plaintiff alleges that the State of Louisiana, through the Department of Public Safety and Corrections (State Police), and Officer Breaux, in his official capacity as a Louisiana State Trooper, are liable under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978) for improper training, condoning unconstitutional police behavior and inadequate and improper procedures, policies and practices for identifying officers in need of re-training or disciplinary or non-disciplinary actions which lead to plaintiff's false arrest and the use of excessive force against him, in violation of his constitutional rights. *R. 1.*

It is well settled that plaintiff's claims against the Louisiana State Police, a state agency, are barred by the Eleventh Amendment and plaintiff's *Monell* claim against the Louisiana State Police must be dismissed. *Cupps v. Louisiana State Police*, 2013 WL 2302688,

*2 (M.D.La.2013)(citing *Williams v. Henagan et al.*, 595 F.3d 610, 618 (5th Cir.2010).[7] The appropriate disposition of plaintiffs' claims against the State of Louisiana, LADOC, and the Louisiana State Police is to dismiss them without prejudice for lack of subject matter jurisdiction. *Warnock v. Pecos County, Texas et al.*, 88 F.3d 341, 343 (5th Cir.1996).

As to plaintiff's *Monell* claims against Officer Breaux, in order to hold an entity such as the State Police liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the entity's policymaker was the moving force behind, or actual cause of, the constitutional injury. *See, James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir.2009). The Court has found that the force used against plaintiff was not excessive and that there was no false arrest. Thus, because there was no constitutional violation, the *Monell* claims against Officer Breaux must be dismissed.

*State Law Claims*

To the extent plaintiff asserts state law claims, they invoke the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a). This jurisdiction may be declined if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Since the Court has dismissed plaintiff's federal § 1983 claims, it declines jurisdiction over the state law claims and they will be dismissed without prejudice.

*Conclusion*

Based on the foregoing, defendants' motion for summary judgment will be granted and: (1) plaintiff's claims under 42 U.S.C. §1983 for excessive force and false arrest will be

---

[7] The Eleventh Amendment bars all suits for monetary relief brought in federal court against a state or state agency unless the state has consented to suit. *Cozzo v. Tangipahoa Parish Council–President Government*, 279 F.3d 273, 280–81 (5th Cir.2002). Louisiana has not waived sovereign immunity. La. R.S. 13:5106(A). *See, Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir.1999).

13.

dismissed with prejudice; (2) plaintiff's *Monell* claims against the Department of Public Safety and Corrections, State of Louisiana, will be dismissed without prejudice for lack of jurisdiction; (3) plaintiff's *Monell* claims against Officer Becket Breaux in his official capacity as a State Trooper for the State of Louisiana will be dismissed with prejudice; and, (4) plaintiff's state law claims will be dismissed without prejudice.

                                              Richard T. Haik, Sr.
                                              United States District Judge